WILLIAM B. DE LAS CASAS & others, petitioners.

Suffolk.   December 2, 3, 1901. — February 27, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Metropolitan Parks District*, Award of apportionment commissioners.  *Constitutional Law.*

In considering an award made by commissioners appointed under St. 1899, c. 419, to determine the proportions to be paid by cities and towns within the metropolitan parks district for the next five years, if it appears that the commission has proceeded in due form and has made an award which it deems just and equitable, and which is not shown clearly to be unreasonable, the award should be accepted as made under the authority delegated to the commission and not shown to be repugnant to the constitution.

Commissioners appointed under St. 1899, c. 419, to determine the proportions to be paid by cities and towns within the metropolitan parks district for the next five years, lawfully may adopt valuation as a basis of apportionment and may modify it by requiring cities and towns having a *per capita* valuation exceeding $2,000 to pay more in proportion of the assessment than those having a *per capita* valuation of less than $1,000.

In determining the proportions to be paid by cities and towns within the metropolitan parks district for the next five years, the questions, whether any allowances are to be made, and if so what allowances, for benefit by reason of the local situation of parks or boulevards, are questions of fact upon which this court has no power to disturb the findings of the commissioners appointed under St. 1899, c. 419.

PETITION by the metropolitan park commissioners under St. 1899, c. 419, for the appointment of apportionment commissioners, filed March 26, 1900.

The award of the commissioners was recommitted to them in accordance with a decision of this court reported in 178 Mass. 213, in order that they might state the grounds of their determination.   Thereafter the commissioners filed a supplemental award.

The case came on for hearing before *Loring*, J., on a motion of the Attorney General for the acceptance of the award.   The award was objected to by the city of Newton and the towns of Milton and Brookline.   The last named town filed a motion to recommit the award, and later the town of Milton was permitted to join in the motion.

The justice was of the opinion that the questions arising upon

the motions of the Attorney General and of the town of Brookline should be reserved for the consideration of the full court, and reported the case for such consideration, the previous report by *Barker,* J., together with the tables, schedules and statements annexed thereto, to be treated as a part of the report, and the full court to assume that all the facts and matters stated in the previous report had been found by the reporting justice; such order and disposition to be made of the case as the full court might deem proper.

*F. H. Nash,* Assistant Attorney General, for the petitioners.

*C. A. Williams & W. D. Turner,* for the town of Brookline.

*J. R. Dunbar & F. Rackemann,* for the town of Milton, submitted a brief.

HAMMOND, J. This case comes before us upon objections made by the towns of Brookline and Milton to the supplemental award.

The power of the Legislature in a matter of this kind was elaborately considered in the case of *Kingman, petitioner,* 153 Mass. 566, and, so far as material to the questions arising in this case, was sufficiently defined, and we simply refer to the opinion in that case for a statement of the ground upon which the power rests and the reasoning by which it is sustained.

In the present case the Legislature designated the towns and cities by whom should be borne the cost of this public work. It might have gone further and stated the proportion to be charged to each place, and such an apportionment would have stood unless repugnant to the Constitution. If it thought proper it might have delegated to a commission the duty of making the apportionment, and it might itself have appointed the commission and directed the report to be made directly to itself, or it might have provided, as was actually done, that the commission should be appointed by the court and that the report should be made to the court, and when accepted by it should be final. It might also properly refrain from giving to the commission any decisive or definite rule of action, but direct, as it did, that they shall make such an apportionment as to the commission shall seem just and reasonable. Upon the question of the power of such a commission, the following language from the opinion in *Kingman, petitioner, ubi supra,* p. 579, is so appropriate to this

case that we quote it *verbatim :* "It cannot be laid down as a rule, that in the distribution and apportionment of this public burden it is necessary to aim at exact equality or proportion, according to any rule or standard which is to be laid down and defined beforehand. The apportionment should be just and equitable, under all the circumstances which may be found to exist. In the determination, there must necessarily be a large discretion as to the weight which is to be given to particular considerations. It should not, however, be understood that the discretion is wholly arbitrary. It is limited and defined by the requirement that the proportion shall be determined in such manner as the commissioners shall deem just and equitable; and this discretion is to be exercised under the supervision and subject to the sanction of this court. No doubt an award which should be found extravagant and unreasonable would be rejected."

It is to be observed, however, that it is the discretion of the commissioners and not of the court which is to govern. Whenever the award is presented, the court, upon a suggestion that the commission has proceeded illegally, may inquire into the matter, whether the illegality suggested be in the conduct of the commission or in the nature of the award, and, if necessary, may recommit the award, as was done in this case, in order that the commission may state matters material to the inquiry. If it finally appears to the court that the charge of illegality as to the conduct of the commission is sustained, or that the award is unreasonable and therefore repugnant to the Constitution, (Const. Mass. c. 1, art. 4,) the court may reject it. When, however, either in the original or supplemental report, it appears, that the commission has proceeded in due form and has made an award which it deems just and equitable, and it is not clearly shown to be unreasonable, it should be accepted because it is made under the authority delegated to the commission and is not shown to be repugnant to the Constitution. The court is simply to see that the commission has proceeded within its powers and in conformity with the Constitution, and until the facts are shown to the contrary the presumption is that it has not violated the provisions of the Constitution.

Accordingly, when this case was here before, it was held that it was proper that the "commissioners should report the grounds

of their determination so far as to enable the court to see that no constitutional rights have been impaired, within the principles laid down in the Kingman case," and the report was recommitted. The commissioners having made a supplemental award differing from the original only in stating the reasons upon which that was based, the case is before us, as we have stated, upon objections by the towns of Brookline and Milton.

1. They object to the award "Because it cannot be ascertained from anything in the award and supplement what the exact method of apportionment adopted by the commissioners was, and because the commissioners have refused to make known the method adopted by them, so as to enable the respondents to follow the method of working out their results, and ascertain whether the excessive share of the cost allotted to the respondents is due to clerical error in computation, or to the consideration of some improper and incompetent ground as the basis of the assessment."

As to this, the commissioners report, that after considering whether the assessment should be made upon the basis of population or valuation, either alone or in combination with each other, they disapproved of population as a basis, and adopted valuation with certain modifications, which they describe as follows:

" We found that the thirty-nine cities and towns of the district readily grouped themselves into three classes. . . .

" Class 1 contains the places which we found needed relief. None of their *per capita* valuations reach $1,000.

" Class 2 contains the great bulk of the average municipalities.

" Class 3 contains those of *per capita* valuations exceeding $2,000. Total valuations about the same as those of class 1."

Having made this classification, they were " convinced that an abatement of one quarter in the assessments upon valuation of class 1, and a transfer of the amount of the abatements to class 3 was called for and just, and was within the scope of correctness and safety." They accordingly made that abatement, which was $15,260.22, estimated by them to be three and fifty-eight one hundredths per cent of the entire amount apportioned, and added it to the assessments of the municipalities of class 3, in proportion to valuation. The commissioners further say: " After arriving at the apportionment of each municipality upon the foregoing

grounds, the commission proceeded to consider the case of each one and the proportion assigned to it, individually and on its own merits. We considered all the evidence and the facts appearing on the views which were taken, and adjudged that on the evidence and facts we deemed each assessment in itself just and equitable."

We think that the commissioners have stated in sufficient detail the lines upon which they proceeded. They evidently have interpreted the decree recommitting the report in the light of the language of the former opinion in this case that "excessive minuteness is unnecessary." *De las Casas, petitioner*, 178 Mass. 213, 219. The general lines having been shown and the reasons given, there is no reason for believing that any substantial error has been made in their arithmetical calculations, or that they have proceeded upon unreasonable or unconstitutional grounds in the minor changes.

2. The further objection that the statement made in the report that the valuation of class 1 is "about the same" as that of class 3 is incorrect, proceeds upon an erroneous idea of class 1. It is not stated that "the places which we found needed relief" comprised all the places having a *per capita* valuation of less than $1,000, but that in no one of them was there such a valuation equal to $1,000. In this there is nothing inconsistent with the statement that the *per capita* valuations of the two classes were "about the same." If it be true also, that the sum transferred from class 1 to class 3 was three and fifty-six one hundredths per cent instead of three and fifty-eight one hundredths per cent of the entire sum apportioned, the objecting towns have no cause for complaint. The sum transferred is stated, and so slight a difference in the relation it bears to the whole sum apportioned is immaterial upon any question before us.

3. It is further objected that the commissioners rejected all consideration of special benefit received by the various towns and cities on account of the parks in the system. In support of this exception it is strongly urged that such benefits exist, and that to reject the consideration of them was wrong, unjust and unreasonable. It is also said, that the commissioners assessed for betterments for boulevards, that there was as much reason for assessing betterments for parks as for boulevards, and more-

over that park betterments were considered by the former commissioners and were made an element in their report, and that this action was approved by this court by accepting the report.

As to this these present commissioners, after stating the claims of the various cities and towns, say: "The subject was left so completely obscure that we could not justify any named betterment figures, and especially could not name the grounds for any such finding." They accordingly made no such assessments. They considered the matter and acted upon their own judgment. Whether, as between the parties to be affected by this award there were any such betterments was a question of fact and not of law. The commissioners have not been able to find any such benefits, and we cannot say as matter of law that in that they were wrong or that under that finding such betterments should have been assessed by them. And this is so, whether or not a former commission reached a different conclusion which was accepted by the court. In the case of the boulevards, the commission did find that betterments should be assessed. These questions of fact were left to the commission, and we have no power to disturb either finding.

4. It is further objected that the award is especially unreasonable so far as respects the towns of Brookline and Milton and the rest of class 3; and in support of this objection it is urged that the transfer of a certain portion of the assessment from the towns in class 1 to class 3 is based upon a novel and unsound principle, is not justifiable upon any rule of practice, and is an unjust, unreasonable, and therefore unconstitutional discrimination against the towns and cities in the latter class.

As to this the commissioners say, that the creation of the metropolitan park district made what seemed to them a "new and peculiar entity," that their guide was what they deemed just and equitable, that the subject seemed to them to require them to "examine, widely not only in regard to one public requirement, but also into the circumstances and situation to which this new demand has been appended," and that they "did not feel at liberty to treat this park cost apportionment as an isolated subject, or one devoid of circumstances, but rather as an additional public duty to be dealt with in connection with

those already existing — as a new burden superinduced upon others already unequally borne, and that an award might be possible which should leave less inequality for the next five years."

It thus appears, that the commissioners considered the various cities and towns, noted the inequalities in the weight of the public burdens respectively resting upon them, and in the manner described undertook in making this assessment so to lay this assessment as to equalize the whole public burden. We think that this was a proper matter for consideration, that such an act upon the part of the Legislature within certain limits would not have been unconstitutional, and that it cannot be regarded as unconstitutional when done through this commission. The extent to which such a principle can be carried is of course one of degree, but, so far as disclosed by the circumstances before us, we cannot say that in considering this matter they have exceeded the proper or constitutional limits of their delegated power.

*Award accepted.*