STATE EX REL. VAN DYKE and others, Trustees, Plaintiffs, vs. CARY, County Clerk, Defendant.    [Crossappeals.]

*November 13, 1922—November 13, 1923.*

*Taxation: Income taxes: Stock dividends: Value: Par or market: Teachers' retirement surtax: Uniformity in taxation, not in distribution of proceeds: Cities maintaining own retirement system: Rate of surtax.*

1. A stock dividend is lawfully assessable for income-tax purposes under sub. (2) (b), sec. 71.02, Stats. 1921. *State ex rel. Dulaney v. Nygaard,* 174 Wis. 597, adhered to.

2. In the absence of express statutory language otherwise providing, property should ordinarily be valued for taxation purposes at its actual going value rather than at a fictitious or mere book value; but in view of sec. 1753, Stats., prohibiting the issuance of corporate stock except for money or for labor or property estimated at its true money value, actually received by it, equal to the par value thereof, a stock dividend is subject to an income tax on its par value when greater than the market value, since neither the corporation nor the stockholders may be heard to. say that it was not worth par.

3. Ch. 459, Laws 1921, imposing a surtax on incomes for the benefit of the teachers' retirement fund, and providing that twenty-five per cent. of the amount collected from a city of the first -class in which a teachers' annuity and retirement fund is maintained shall be remitted to the city treasury to become a part of its annuity and retirement fund, is not unconstitutional as lacking uniformity, though because of the maintenance by such city of its own retirement system the individual taxpayer in such city receives less real or theoretical benefit from the surtax than taxpayers outside the city, as inequality in disbursing proceeds after collection does not invalidate a tax. Such a provision is, however, not so unreasonable and arbitrary as to compel judicial interference, in view of the fact that the state retirement system covers the university and normal schools, which are of state-wide importance.

4. Under sec. 71.06, Stats. 1921, imposing an income tax at the rate of one per cent. on the first $1,000 of taxable income and higher rates on each additional $1,000 or part thereof, and ch. 459, Laws 1921, imposing a surtax at one sixth of the rates prescribed by sec. 71.06 on the net income in excess of

State ex rel. Van Dyke v. Cary, 181 Wis. 564.

$3,000, the first $1,000 subject to the surtax is taxable at the rate of one sixth of one per cent. and not at the rate of one sixth of one and three-fourths per cent., the rate applicable to the fourth $1,000 under sec. 71.06.

CROWNHART, J., dissents in part.

CROSS-APPEALS from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Modified and affirmed.*

The relators are trustees under the will of Charles L. McIntosh, deceased, and brought this proceeding to review certain determinations made by the taxing officers as to the income tax assessed against such trustees for income received by them during the year 1920. A particular item involved was the distribution to such trustees by the J. I. Case Threshing Machine Company, a Wisconsin corporation, of 3251.1429 shares of the common stock of said company as their forty-two per cent. proportionate share of a stock dividend. The shares thus issued were of the par value of $100. An assessment was made upon the entire net income to said trustees, including such stock dividend valued at par, and the amount claimed to be due from said trustees included the normal income tax, educational bonus surtax, and teachers' retirement fund surtax.

Upon objections interposed by the trustees a hearing was had before the income tax board of review and evidence presented as to the market value of the common stock of the corporation above named, such stock not being listed on any stock exchange.

The board of review modified the assessment by placing the valuation on such stock dividend on the basis of the market value as shown by such evidence of $70 per share as of the time of the distribution, and, adopting such market instead of the par value, materially reduced the assessment.

Thereafter an appeal was taken to the Wisconsin tax commission, which reinstated the original assessment.

A writ of *certiorari* was then issued out of the circuit court for Milwaukee county to review such determination, and upon hearing, in disposing of the contentions presented, in substance it was held as follows:

(1) That the stock dividend distributed to such trustees is assessable as income.

(2) That, being so assessable, it should be assessed at its market rather than its par value.

(3) That sec. 20.251, Stats., as created by ch. 459, Laws of 1921, providing for a surtax on incomes for the teachers' retirement fund, so far at least as the same affects the taxpayers of the city of Milwaukee, is unconstitutional.

(4) That if it should be held that an assessment on incomes under such statute could be properly made, the assessment should be computed by starting at one per cent. on the first $4,000 of income rather than at one and three-fourths per cent.

The consideration of the third point above stated involved a consideration of the following:

At present and for some time past there have been two separate and distinct legislative systems regulating the tenure of office and pensioning of school teachers; one relating to cities of the first class, meaning, and as it will be hereinafter referred to, the city of Milwaukee, and the other for school teachers in the state outside of that city, and which we shall call the state system.

The Milwaukee law was prior and first enacted by ch. 453, Laws of 1907; it was repealed and recreated by ch. 510, Laws of 1909, and from then on until 1919 the Milwaukee system was designated as sec. 925—*xx*, Stats. It now appears as sec. 42.55.

The state system was first created by ch. 323 of the Laws of 1911, and now appears as secs. 42.20 to 42.54, Stats.

Under each of such systems contributions were required from the respective teaching forces to be deducted from their salaries. In the Milwaukee law that city was required,

by what is now sub. (20) (a), sec. 42.55, Stats., to set aside from the general fund of that city levied and collected for the support of its schools from the taxpayers of Milwaukee an amount to make up any possible deficit in the retirement funds to an amount not less than that paid by the teachers themselves during the specified periods; in the state law, by what is now secs. 42.45 and 42.46, providing that upon proper certificates the state treasurer shall transfer from the appropriate fund in his hands to the state retirement deposit fund a sufficient amount to make up any required payments out of such fund.

Substantial changes were made from time to time in the two systems, and particularly in 1921 by two separate enactments.

By ch. 459 of that year the then existing provisions as to the state system were enlarged so as to include the university and normal schools, and was further amended and reenacted in matters not material here except in the one particular hereinafter mentioned. In the Milwaukee law, ch. 591, Laws of 1921, inserted what is now sub. (20) (b), sec. 42.55, Stats., providing for the equalization of payments into the retirement fund as apparently required by the new surtax created by the aforesaid ch. 459 and now to be specified.

By said ch. 459 there was also provided, by what was designated in said chapter to be numbered sec. 20.251, (1) to (7) (and now found inserted in ch. 20, Stats., "Appropriations and salaries," and under the subheading "Common schools"), for an additional surtax upon the net income in excess of $3,000 of individuals, copartnerships, and fiduciaries (other provisions are not material here) at one sixth the rates prescribed in sub. (1) of sec. 71.06, Stats., the Income Tax Act. It also provided for computing the net income as in secs. 71.01 to 71.05. It also provided that the whole amount of such surtax shall, as other income taxes are paid, be paid into the state treasury. It then declares

that sec. 71.19, which provides for the apportionment of the general income taxes between the state, the county, and towns, cities, and villages, respectively, should not be applicable to this surtax. It then provides that the whole of such surtax, wherever collected, should be paid into the general fund of the state treasury and be set apart for the state retirement funds, except that the state treasurer shall annually remit to the city treasurer of Milwaukee twenty-five per cent. of the amount of such surtax as so levied and collected from the taxpayers of Milwaukee, such twenty-five per cent. to become a part of the Milwaukee teachers' annuity and retirement funds. Then the following provision, sub. (7), sec. 20.251:

"Whenever in any year the receipts from the surtax herein provided for shall not be sufficient to provide the necessary moneys to carry out the provisions of this act [*i. e.* ch. 459, Laws 1921], the deficit shall be paid out of the general fund of the state treasury, and if in any year such surtax provides more money than is needed, such excess shall be paid into the general fund of the state treasury."

From the judgment entered the respective parties have taken cross-appeals.

For the plaintiffs there was a brief by *Upham, Black, Russell & Richardson,* attorneys, and *Irving A. Fish* and *Perry J. Stearns,* all of Milwaukee, and a supplemental brief by *Irving A. Fish,* of counsel; and the cause was argued orally by *Mr. Fish* and *Mr. Stearns.*

For the defendant there was a brief by *William J. Morgan,* attorney general, *Ralph M. Hoyt,* deputy attorney general, *Winfred C. Zabel,* district attorney of Milwaukee county, and *Daniel W. Sullivan,* assistant district attorney; and the cause was argued orally by *Mr. Hoyt* and *Mr. Sullivan.*

On behalf of the Board of the Milwaukee Teachers' Annuity and Retirement Fund there was a brief by *John M.*

*Niven,* city attorney of Milwaukee, and *Charles W. Babcock,* assistant city attorney, as *amici curiæ,* and oral argument by *Mr. Babcock.*

The following opinion was filed January 9, 1923:

ESCHWEILER, J.  The questions here presented are as follows:

(1) Is a stock dividend assessable under the income tax law, sub. (2) (b), sec. 71.02, Stats.?

(2) If so taxable, shall it be assessed at its par or market value, if the latter be the lesser?

(3) Is the surtax for the teachers' retirement fund, sec. 20.251, Stats., as created by ch. 459, Laws of 1921, so far at least as Milwaukee taxpayers are concerned, in violation of state or federal constitutions?

(4) If such surtax be valid, should the basic rate of one per cent. or one and three-fourths per cent. (sub. (1) (a), (d), sec. 71.06) be applied to the first $4,000 of the taxpayer's net income?

On the first question we shall adhere to the ruling in *State ex rel. Dulaney v. Nygaard,* 174 Wis. 597, 183 N. W. 884, where this precise question was fully considered and it was held that a stock dividend is lawfully assessable under our statute for income-tax purposes.

In a very able and comprehensive argument counsel for relators challenge the correctness of our former decision and ask that we now overrule it. Stress is laid upon the fact that the House of Lords, in *Commissioners of Inland Revenue v. Blott,* 125 L. T. Rep. 497, decided just a month before our decision in the *Dulaney Case, supra,* held that a distribution of shares out of the profits of a corporation to the shareholders, they having no option but to receive it in such form, must be considered as capital and not taxable income, thus apparently overruling a decision by the Judicial Committee of the Privy Council (1914) in *Swan Brewery Co. v. The King,* 110 L. T. Rep. 211, and which was considered

by the federal supreme court in *Eisner v. Macomber*, 252 U. S. 189, 216, 40 Sup. Ct. 189, in arriving at the determination there reached in accord with the view now held by the House of Lords in the *Blott Case, supra.* The Massachusetts court, whose views we adopted in the *Dulaney Case,* as expressed in *Tax Comm'r v. Putnam*, 227 Mass. 522, 116 N. E. 904, has reaffirmed that view in *Tilton v. Tax Comm'r*, 238 Mass. 596, 131 N. E. 219, decided in May, 1921, practically simultaneously with the *Blott* and *Dulaney Cases, supra.*

On the second of these questions the court below held that the actual or market value of such dividend stock at the time it was issued and distributed, rather than its par or face value, should be its value for such assessment purposes.

Ordinarily it is undoubtedly true that, in the absence of express statutory language otherwise providing, property should be valued at its actual going value rather than at fictitious or mere book value. *State ex rel. Howe v. Lee,* 172 Wis. 381, 386, 178 N. W. 471; *Doyle v. Mitchell Bros. Co.* 247 U. S. 179, 187, 38 Sup. Ct. 467; *Osgood v. Tax Comm'r*, 235 Mass. 88, 92, 126 N. E. 371; *Cummings v. National Bank,* 101 U. S. 153, 162. As to real estate, such basis of actual or sale value is fixed by statutory declaration. *State ex rel. Northwestern Mut. L. Ins. Co. v. Weiher,* 177 Wis. 445, 188 N. W. 598. And inquiry may be made as to the source of the dividend in questions of taxation. *State ex rel. Moon v. Nygaard,* 170 Wis. 415, 418, 175 N. W. 810; *Matter of Osborne,* 209 N. Y. 450, 475, 103 N. E. 723, 823. But a somewhat special situation is here presented by the provision regulating the issue of common stock such as this, though issued for dividend purposes, by a Wisconsin corporation. It could only lawfully be issued by the company, and of course only so received by relators pursuant to and under the conditions of sec. 1753, Stats., the material part of which reads as follows:

"No corporation shall issue any stock or certificate of stock except in consideration of money or of labor or

property estimated at its true money value, actually received by it, equal to the par value thereof, . . . and all stocks and bonds issued contrary to the provisions of law and all fictitious increase of the capital stock of any corporation shall be void."

Its stamped or mint value, so to speak, as so issued by the corporation and delivered to and received by the relators at the time of the distribution must be considered and assumed to be then of the par value expressed and stamped on the face thereof. Otherwise it is a fictitious increase and void in whole or in part under the above quoted statute. It being properly considered as taxable income, neither the corporation that issued it nor the stockholders who received it ought to be heard to say that as so issued by the corporation and received by the relators it was of less value than that which the statute directs must be its then true money value—par. Its selling value thereafter is immaterial. But being assessable as income, and of the moment of issue and distribution by the corporation and receipt by the stockholders, it should, for taxing purposes at least, be treated as of par value.

On the third question the trial court held that the legislation of 1921, ch. 459, so far as it attempted a surtax for the teachers' retirement fund, violated the constitutional requirement of uniformity and was for that reason void; the alleged lack of uniformity being that the taxpayer of Milwaukee may have a heavier tax burden to bear so far as this teachers' retirement fund tax is concerned than is borne by the taxpayer outside of Milwaukee, in that the former, while paying to the city his school tax to help carry on the city's share of the Milwaukee teachers' retirement fund, is also required to contribute to the state system by the surtax, out of which latter contribution there is an arbitrary distribution to Milwaukee's fund of but twenty-five cents out of each dollar he so contributes. This alleged lack of uniformity, however, is one that relates to the manner of the distribution of the proceeds from taxation

rather than one relating to its prior assessment and collection. The scheme for the collection of this surtax is one that does not offend against the legal canons as to uniformity in taxation; it makes the same kind of a call on the taxpaying resident of the metropolis that it does on the taxpaying denizen of the rural district, and each taxpayer, no matter where he resides in the state, is required to pay at the same rate upon the same income as any other taxpayer—no more and no less. Up to the point where the proceeds from such surtax reach the state treasury there has been no violation of any constitutional requirements, either express or implied.

The lack of uniformity, if any exists, in this situation is as to the distribution of the proceeds of the tax. It well may be that in view of the substantial differences, not necessary here to particularize, between the Milwaukee system and the state system, the individual taxpayer in Milwaukee receives less real or theoretical benefit per dollar of his contribution to the surtax than does the taxpayer outside of that city, but such is *post,* not *ante,* to the surtax reaching the state treasury and becoming there ready for disbursement.

That there is a substantial distinction between an inequality in the assessing or collecting of a tax and inequality in the disbursing of its proceeds among those who contributed, and that while the former may invalidate the tax the latter does not, is established doctrine in this state. *State ex rel. Owen v. Stevenson,* 164 Wis. 569, 580, 161 N. W. 1; *Rinder v. Madison,* 163 Wis. 525, 529, 158 N. W. 302; *Land, L. & L. Co. v. Brown,* 73 Wis. 294, 303, 40 N. W. 482; *State ex rel. Baraboo v. Sauk Co.* 70 Wis. 485, 489, 36 N. W. 396; *State ex rel. Atwood v. Johnson,* 170 Wis. 218, 243, 175 N. W. 589.

The same rule is held in other jurisdictions. *Bayville Village Corp. v. Boothbay Harbor,* 110 Me. 46, 50, 85 Atl. 300; *Chelsea v. Treasurer,* 237 Mass. 422, 431, 130 N. E.

397; *In re De Las Casas,* 180 Mass. 471, 472, 62 N. E. 738; *Att'y Gen. v. Williams,* 174 Mass. 476, 55 N. E. 77.

We certainly cannot say upon the showing here that the required refund to Milwaukee of but twenty-five cents for its teachers' fund out of each dollar its taxpayers contribute to this surtax is so unreasonable and arbitrary as to compel judicial interference. The state system now, as it did not before, provides for a retirement fund for those in the teaching forces of the university and normal schools, so that the state system now no longer can be considered as concerned only with schools whose functions and jurisdictions are sharply contrasted with similar schools in Milwaukee; it now includes institutions which must be considered of state-wide importance and not bounded by anything less than state boundaries.

Many other objectiqns are suggested to this surtax, but in the view we have taken of it we do not deem it necessary to make specific reference to them. Many of them are such that, were they valid, yet the relators not being now or at all affected thereby cannot raise them. This brings us to a result contrary to that reached by the court below, and the judgment to that extent also must be modified.

The fourth and last question involves a construction of statutes, and in its solving we can here have no aid from decisions.

By sub. (1), sec. 20.251, Stats. (ch. 459, Laws 1921), this surtax, so far as the question is here presented, is "on net income computed at one sixth the rates prescribed in subsection (1) of section 71.06," and by sub. (3) the surtax "shall be upon the net income in excess of three thousand dollars," and further by sub. (4) net income "shall be computed in the same manner as the income taxable under sections 71.01 to 71.05, inclusive."

By sec. 71.06, Stats., it is provided by sub. (1) that the income tax, *"after making such deductions and exemptions as are hereinbefore allowed,* shall be computed at the

following rates, to wit: (a) On the first one thousand dollars of taxable income or any part thereof, at the rate of one per cent. .... (d) On the fourth one thousand dollars or any part thereof, one and three-fourths per cent."

The difficulty here presented is in determining whether the surtax shall commence at one sixth of one per cent. on the first one thousand dollars of income subject to this surtax, or at one sixth of one and three-fourths per cent.

The surtax is only levied upon net income in excess of three thousand dollars—that which in numerical order of thousands of any particular income becomes first subject to this surtax is that one thousand which is the fourth thousand in numerical order of the thousands subject to the general income tax. The net income under the general income tax law is the gross income less the statutory deductions and exemptions; the net income, literally speaking, for this surtax is the same gross income less the same deductions and exemptions, with a further exemption of three thousand dollars more. The first one thousand dollars of net surtax income is identical, therefore, in any particular taxpayer's instance, with the first four thousand dollars of his net general tax income, and it then becomes the basis for the primary rate for the surtax. By the express language of sub. (4), sec. 20.251, *supra,* the surtax net income shall be computed *in the same manner* (not shall be the same) as the general income tax is computed. The latter, of course, is computed by taking from the gross particular income the statutory deductions and exemptions allowable under the general income tax law; therefore to compute, for the purposes of the surtax, the net income in the *same manner* as above, the *first* thousand dollars of net surtax income cannot be arrived at until and after there has been taken from each particular gross income the deductions and exemptions proper under secs. 71.04 and 71.05 and the further three thousand dollars exemption provided

State ex rel. Van Dyke v. Cary, 181 Wis. 564.

for in sub. (3), sec. 20.251, *supra*. The net surtax income, therefore, is that reached after all proper subtractions have been made from the gross income. When this is done, then the first thousand of such surtax net income is chargeable with one sixth of one per cent. according to sub. (1) (a), sec. 71.06, as was held by the trial court.

This view we have taken is rendered more certain when comparison is made with the express language used in the two surtax laws of 1919 and which were passed upon and upheld in *State ex rel. Atwood v. Johnson*, 170 Wis. 218, 175 N. W. 589, and (same title) 170 Wis. 251, 176 N. W. 224. The Soldiers' Cash Bonus Act (ch. 667, Laws of 1919) provided by sec. 7 thereof that such surtax should be, in addition to the normal income tax, "on taxable income computed at the following rates, to wit: (a) on the *fourth* one thousand dollars or any part thereof, *one and three-fourths per cent.*" The latter, the Soldiers' Educational Bonus Law (ch. 5, Special Session of 1919), by sec. 5 providing for that surtax that it should, in addition to the others, be "on taxable income computed at the following rates, to wit: (a) On the *fourth* one thousand dollars or any part thereof, seven-twentieths of one per cent." In each of these acts the quoted provisions are followed by increased rates for the successive thousand dollars of income.

It follows from what has been said that the part of the judgment of the court below declaring so much of ch. 459, Laws 1921, as created sec. 20.251 unconstitutional and void and so much as declared that a stock dividend should be assessed at its market rather than its par value must be set aside, reversed, and it be determined to the contrary in each instance; so much of said judgment as holds the stock dividend taxable as income, and so much as held that the surtax here in question, if taxable, should be charged at the basic rate of one sixth of one per cent. for the first thousand taxable under this law, are each affirmed.

State ex rel. Van Dyke v. Cary, '181 Wis. 564.    Dissent.

*By the Court.*—Judgment modified and affirmed as stated. Neither to have costs as against the other; relators to pay the clerk's fees.

The following opinion was filed January 31, 1923:

CROWNHART, J. (*dissenting in part*).    I concur with the opinion of the court except in that part of the decision as to rates to be applied in assessing incomes for the surtax.

When the bill, 234, S, was before the legislature, the committees necessarily made estimates of the tax to be raised and the probable income based on the rates in the bill.    After the bill passed the two houses and before it was signed by the governor, to be sure of the legislative intent the tax commission asked for and received the public opinion of the attorney general on the proper construction.    In that opinion I fully concur.    It reads as follows:

"June 24, 1921.

"You have asked my opinion as to the meaning of certain surtax provisions of the teachers' retirement fund bill No. 234, S, which has 'now passed both houses and is about to be presented to the governor.

"The bill creates a new sec. 20.251, Stats.    Sub. (1) provides that, in addition to the income tax imposed by the income tax law, there shall be levied on the incomes of all individuals, copartnerships, and fiduciaries a 'surtax on net income computed at one sixth the rates prescribed in sub. 1 of sec. 1087*m*—6.'    The second subsection of 20.251 makes a similar provision as to the income of corporations, referring to the rates named in sub. 2 of sec. 1087*m*—6 as taxable income under the income tax law.    The latter law provides that the surtax 'shall be upon the net income in excess of $3,000.'    The fourth subsection provides that 'net income' shall be computed in the same manner as the income taxable under the income tax law.

"The question on which you ask an opinion is whether, in determining the rate applicable to the first thousand dollars of income subject to surtax, you should take one sixth

of the rate applicable to the same income under the income tax law or one sixth of the rate applicable to the first $1,000 of taxable income under that law.

"Under the definition contained in sub. (4), net income within the meaning of the new law will be exactly the same as taxable income under the income tax law.   The latter law provides as to individuals a rate of 1 % on the first $1,000 of taxable income, 1¼ % on the next $1,000, 1½ % on the third $1,000, and 1¾ % on the fourth $1,000.   The corresponding rates for corporations are 2 %, 2½ %, 3 %, and 3½ %, respectively.   The new law provides that there shall be a surtax on the 'net income,' meaning the taxable income, and it further provides that the first $3,000 of that taxable income shall not be 'surtaxable,' if I may use the term.   It then provides that when the point is reached at which the income becomes 'surtaxable,' the surtax shall equal one sixth the rates prescribed in the income tax law itself.

"To my mind, this very clearly means that the rate payable by a given thousand dollars of income after it reaches the point of being 'surtaxable' shall be one sixth of the rate that that same thousand dollars is concurrently paying as regular income tax.   The new law does not provide for an extra $3,000 to be taken off the gross income before arriving at the net income; on the contrary, sub. (4) expressly provides that the net income for the purposes of the new law shall be ascertained in the same manner as the taxable income is ascertained under the income-tax law.   Hence, the net income, within the meaning of the new law, begins to exist as soon as the taxable income begins to exist under the income law: *i. e.* as soon as there is a margin over the ordinary exemptions and deductions.   As soon as this taxable income or net income begins to exist it is subject to an income tax, but it does not become subject to a surtax until another $3,000 has been added to it.   When this $3,000 has been added it becomes 'surtaxable' at one sixth of the rate at which it is taxable.   That rate, in the case of individuals, is 1¾ %, and in the case of corporations 3½ %. It appears to me that the only meaning logically to be read out of the language of the new law is that the surtax rate applicable to the first $1,000 of 'surtaxable' income is one sixth of 1¾ % in the case of individuals, and one sixth of 3½ % in the case of corporations."

State ex rel. Van Dyke v. Cary, 181 Wis. 564.    Dissent.

No attempt was made to recall the bill for correction and the legislature accepted the construction placed upon it by its official adviser.  The governor signed the bill with that construction before him.  The tax commission accepted that construction and published the opinion in its pamphlet of instructions to assessors.  The taxes were so assessed and generally paid by the persons and corporations coming under the law.  Many of these had expert counsel to guide them in making their returns.  Now at this late date the court, at the suit of an objector, changes the rates as applied in the assessment and collection of the taxes for 1922, and throws confusion into the orderly administration of the law.  I think the construction given by the court is unduly strained and technical.  Taxes are not popular, but, when once laid, justice demands that all taxpayers be treated alike.  Those who have paid without protest cannot get the overcharge back.  The result in this case is to make the great majority of the taxpayers who have paid, take the added burden of the losses occasioned by those who have not paid.

As we have seen, the law was construed by the legal department of the state; that construction was acquiesced in by the legislative department; it was accepted by the executive department in signing the bill; the administrative department sustained such construction and so administered the law; the taxpayers generally have paid taxes under the law so construed without protest for one year, and a second assessment has been spread on the rolls and is now being paid.

"The construction given to a statute by the body of men or officers who are directed to act upon it is always entitled to weight, and their construction should not be overridden by the courts, unless it be contrary to the clearly expressed meaning of the law."  *Wright v. Forrestal*, 65 Wis. 341, 348, 27 N. W. 52.

As indicated, I respectfully dissent from so much of the decision as overrules the decisions of the attorney general and the tax commission.

A motion for a rehearing was denied, without costs, on November 13, 1923.