Fox River Paper Company, Respondent, vs. Department of Taxation, Appellant.

*October 12—November 10, 1942.*

For the appellant there was a brief by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

For the respondent there was a brief by *Bouck, Hilton & Dempsey* of Oshkosh, and oral argument by *Edward J. Dempsey*.

FOWLER, J. The plaintiff sold all of its property to the Fox River Paper Corporation for $1,682,740.52 cash and five thousand shares of $100 par value preferred stock. The company returned its income from the transaction based on the difference between the cost of the property and the sum of the cash received plus $250,000, the market value of the stock, and paid its tax on that basis. It is conceded by the department that the market value of the stock was $50 per share at the time of the transfer. Pursuant to a field audit made by the department the department assessed an additional income tax on the gain made from the transaction on the theory that the stock received should be valued for income tax purposes at par instead of its actual market value. The board of tax appeals confirmed the assessment. The taxpayer appealed to the circuit court for Dane county. The circuit court vacated the tax, and from the order of vacation the department appeals.

It is fundamental that where property is received as full or partial payment for property sold, the property received is to be valued at its fair market value in determining the gain made from the transaction in imposing an income tax upon the gain realized. That corporate stock so received should ordinarily be so valued is conceded by the department. That the instant stock should be so valued is obvious, unless, as contended by the department, the rule of *State ex rel. Van Dyke v. Cary,* 181 Wis. 564, 191 N. W. 546, requires that it should be assessed at its par value.

The basis of the department's claim is that the instant stock was issued by Fox River Paper Corporation, a newly formed

corporation, directly to the taxpayer, and sec. 182.06, Stats. 1937, in force when the transaction occurred, provides:

"*Stocks and bonds; consideration, fictitious increases.* No corporation shall issue any stock other than dividend stock, except in consideration of money or of labor or property estimated at its true money value, actually received by it, equal to the par value thereof, nor any bonds or other evidences of indebtedness, except for money or for labor or property estimated at its true money value, actually received by it, equal to seventy-five per cent of the par value thereof, and all stocks and bonds issued contrary to the provisions of law and all fictitious increase of the capital stock of any corporation shall be void."

In the *Van Dyke Case, supra,* under like circumstances, under sec. 1753, Stats. 1921, now sec. 182.06, in force at the time of the transaction there involved, stock issued, as was the instant stock, was valued for income tax purposes at its par value. The stock there involved was dividend stock.

In our view the *Van Dyke Case, supra,* is not now of force as precedent. The legislature has effectively rendered it inapplicable for that purpose, by amending sec. 1753, Stats. 1921, to exclude stock dividends from its coverage, by especially providing that stock dividends are not taxable as income at the time of their receipt under sec. 71.02 (2) (b) 5, Stats., as they were at the time of the Van Dyke transaction under *State ex rel. Dulaney v. Nygaard,* 174 Wis. 597, 183 N. W. 884; and by amending sec. 1753, Stats. 1921, to permit stock to be issued for property worth seventy-five per cent of its par value instead of one hundred per cent. See Stats. 1921, sec. 1753, and Stats. 1937, sec. 182.06. The case has also been rendered valueless as a precedent by the decision in *Miller v. Tax Comm.* 195 Wis. 219, 217 N. W. 568, which holds the *Van Dyke Case* inapplicable to a situation similar to the instant one. The taxpayer in that case

was about to construct and operate a cold-storage warehouse. He erected the warehouse, formed a corporation, and for the warehouse and the corporation's $10,000 note received stock of the par value of $210,000. An income tax was imposed on him on the difference between the cost of the property and $210,000. The court held that the transaction did not result in any profit to the property owner. There being no profit, there was no income, and there being no income, no income tax could be imposed. The logic of the decision negatives imposition of any income tax as a result of a sale of property except upon profit. The profit in the instant case clearly was the difference between what the property involved cost the owner and the sum of the cash received plus the value of the stock received. The value of the stock was admittedly only $250,000. The Department of Taxation used as the subtrahend the cash received plus $500,000 par value, whereas the proper subtrahend was the cash received plus $250,000 market value.

*By the Court.*—The order of the circuit court is affirmed.